**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| **v.** | : | **MAGISTRATE NO.   14-1484 & 1485-M** |
| **CHRISTOPHER GOLDSTEIN**<br>**DONALD DEZARN** | : | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States, by the undersigned counsel, represents as follows:

A. Procedural Background

Defendants Christopher Goldstein and Donald Dezarn were charged by citation with possession of a controlled substance, in violation of 36 C.F.R. § 2.35(b)(2), in connection with an incident on August 31, 2013.   On January 27, 2014, the defendants went to trial and were found guilty.   Sentencing is scheduled on March 26, 2014.

B. Possible sentences

This violation is punishable by six months imprisonment.   36 C.F.R. § 1.3(a).   Offenses punishable by six months imprisonment are Class B misdemeanors.   18 U.S.C. § 3559(a)(7).   In addition to six months imprisonment, Class B misdemeanors are each punishable by a $5,000 fine, five years probation, and a $10 special assessment.   18 U.S.C. §§ 3013(a)(1)(A)(ii), 3561(c)(2), and 3571(b)(6).

C. Criteria for sentencing

The United States Code provides that sentencing shall be based on the conditions set forth by statute.   18 U.S.C. §§ 3551, 3553.   The Code states that the Court must consider the

1

nature and circumstances of the offense and the characteristics of the defendant.   18 U.S.C. §

3553(a)(1).   The sentence shall be "sufficient, but not greater than necessary" to effectuate these

purposes:

> - to reflect the seriousness of the offense
>
> - to promote respect for the law
>
> - to provide just punishment for the offense
>
> - to afford adequate deterrence to criminal conduct
>
> - to protect the public from future crimes of the defendant
>
> - and to provide the defendant with needed medical care or educational training or
>   other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).   These considerations also direct the Court's imposition of conditions of

probation.   18 U.S.C. § 3563(b).   Thus the Court can impose any conditions of probation as

long as they are related to the factors listed above and they involve only deprivations of liberty as

are reasonably necessary to fulfill the purposes of probation.   18 U.S.C. § 3562(b)(22); *United

States v. Goldin*, 311 F.3d 191, 197-98 (3d Cir. 2002); *United States v. Warren*, 186 F.3d 358,

366 (3d Cir. 1999).   Sentencing for these offenses is not covered by the Sentencing Guidelines

but is left to the discretion of the Court.   *In re Grand Jury (Matter of Solomon)*, 465 F.3d 114,

119-22 (3d Cir. 2006).

D. Offense history and course of conduct

The August 31, 2013 arrest of the defendants for possessing marijuana on federal property was not the first marijuana offense on federal property for either defendant.   Both had been arrested previously, Dezarn on May 18, 2013 and Goldstein on June 30, 2013 (Presentence Report (PSR), Dezarn ¶ 8; Goldstein ¶ 7).   Neither contested their guilt on those charges and both paid a fine of $175 for their offense.

These defendants were not randomly in Independence National Historical Park smoking marijuana at the time of their offenses; they were there as part of a series of organized and publicly promoted monthly marijuana smoking events.   Defendant Goldstein was a main organizer and self-appointed media contact for the events.

After the marijuana events grew larger in the spring of 2013, particularly on April 20, 2013, greater numbers of uniformed National Park Service Rangers and Philadelphia Police were assigned from other duties to the event held on May 18, 2013.   That day officers set up an evidence processing area surrounded by barricade fencing.   Rather than be deterred by the increased law enforcement presence, the so called "civilly" disobedient demonstrators turned violent, with their leaders attempting to get demonstrators to lock arms to obstruct law enforcement officers.   Defendant Dezarn was present during the ensuing struggle with uniformed Rangers.

(See government videos submitted on the accompanying disc.   In the video marked (3), please note the presence of Richard Tomaccio, also known as NA Poe, who was prosecuted before and sentenced by United States Magistrate Judge Perkin.   At approximately the 1:00 minute mark on the video, Tomaccio, wearing a yellow t-shirt, and a yellow hat with a green

towel under it, urges the crowd to lock arms to thwart law enforcement officers and counts down to the time when the crowd was to smoke marijuana.   Defendant Dezarn is in the center of the screen at 1:47 with a shaved head and wearing a green T-shirt, locking arms with another person. Tomaccio had to be forced to the ground by Rangers and one Ranger in the incident suffered a torn rotator cuff which required surgery.   Dezarn was found in possession of marijuana.

In the video marked (7), please note the hostile crowd which surrounded the arresting officers while they attempted to control Tomaccio, such that plain clothes and uniformed Philadelphia Police officers moved in to protect the arresting officers.)

Defendant Goldstein and the group returned to the Park on June 30, 2013, again with the publicly promoted intent to smoke marijuana.   Goldstein was arrested this time for possession of marijuana.

On July 11, 2013, Richard Tomaccio pled guilty in federal court to charges of possession of marijuana, disorderly conduct, and interfering with agency function.   Immediately afterwards, outside the Courthouse on Market Street, defendant Goldstein held a "press conference."   (On video disc labelled "Press conference for NA Poe").   In this press conference, Goldstein advertised the next marijuana smoking event in Independence Park on July 26, 2013.   He urged attendees to bring "a joint."   He also said that if law enforcement wanted to be there to do "taxpayer funded street theater,"… "we will definitely make this a Broadway show."   Video at 0:30 – 2:00.   Goldstein also announced that he intends to return each month.   Video at 5:30-6:50.

Goldstein then participated in a video prior to this marijuana event aimed at reducing the violence by marijuana demonstrators.   (Video labelled "Defendant 4.")   At the July

4

demonstration Goldstein apparently smoked marijuana but was not apprehended by Rangers.

On August 31, 2013, both Goldstein and Dezarn were present in the Park and again caught with marijuana.   While Dezarn testified at trial that he did not get his marijuana cigarette lit, video evidence shows him exhaling smoke from the lit marijuana cigarette.   (Video labelled "Don Dezarn at Smokedown Prohibition VIII," 1:33-48)   Prior to this event, a performer scheduled to sing during the marijuana event entered the barricaded area of the Park closed for evidence and prisoner processing.   The performer was repeatedly asked to leave the area.   After she refused, Rangers attempted to escort her from the area.   She fought with Rangers and eventually spit in the eyes of one Ranger who was attempting to fasten her safety belt in a patrol car.   This case is still pending in this Court.   (See complaint re Emily Yates attached.)

Both before and after this last arrest, Goldstein issued "press releases" regarding upcoming marijuana events.   (Press releases attached.)   Goldstein also participated in a promotional video for a marijuana event on October 26, 2013.   (Video labelled "Dawn.") .   In his press releases Goldstein repeatedly and falsely claimed that, at the marijuana events, "dozens of participants" have been "tackled to the ground and aggressively detained" by law enforcement officers.   Press releases from 9/19/13, 10/14/13, 12/12/13, 12/27/13, and 1/28/14.   Goldstein also advertised a public fundraising campaign to pay for his defense and fine.   Id., 12/12/13, 12/17/13, 12/27/13, and 1/28/14; "Go Fund Me" pages attached.   In the same message attempting to raise funds, Goldstein falsely stated that he and Dezarn "face the only federal trial for marijuana possession in recent memory."   Id., 12/12/13.   *See United States v. Stewart*, 686 F.3d 156, 169-70 (2d Cir. 2012)(the court may consider defendant's public statements that are relevant to sentencing factors).

5

E. Post-verdict conduct by Dezarn and Goldstein

On January 27, 2014, immediately following his conviction before this Court, defendant Dezarn returned to the Park and smoked marijuana again.   Dezarn was videotaped by a member of his group, who announced an unofficial "Smokedown." While he was smoking, Dezarn made sure that the video recorder was on.   (Video labelled "tXYM2fcI4Ug," titled Don Dezarn Detained After Court", at 0:10-1:00).   When a uniformed Ranger approached, Dezarn quickly passed the marijuana cigarette to another person so that it was not recovered.   This video was posted to the internet for public viewing on Youtube (posting records and certificate of authenticity from Google on disc).

Another marijuana smoking event has been announced for April 20, 2014 in the Park. (Flyer attached.)   This event is "presented" by Philly NORML, the organization of which defendant Goldstein is a co-chair.   Defendant Goldstein has also begun personally advertising this event on social media (March 4, 2014 "tweet" attached).

F. Defendants' backgrounds

Defendant Goldstein is a 37 year old graduate of a private high school.   He has been a paid employee once, from 2005-2008, in the service of a marijuana reform organization.

Defendant Dezarn is 47 year old college educated military veteran.   He is employed and has a long record of employment.

Both defendants have substantial financial means.   Goldstein has inherited money and, despite having no employment, has over $70,000 in net worth and had income of almost $50,000 in 2012.   Dezarn has assets of over $100,000 and a steady income.   Despite the ability to pay a fine from their own funds, they have chosen to raise money from the public.   PSRs – Goldstein,

6

¶ 34; Dezarn, ¶  36.

G. Sentencing Recommendation

Both defendants have made clear their contempt for the law.   Not simply the law restricting marijuana possession, but the very authority of this Court.   Both defendants knew last year, from May 18 on, that law enforcement officers would be citing those who broke the law. As if the presence of uniformed officers was not enough deterrence at these events, the Park Service repeatedly posted signs in the demonstration area listing the relevant Code of Federal Regulations Section and the possible penalties.   After being cited once, both defendants returned to the Park to repeat the offense.   Goldstein encouraged others to appear and issued "press releases" complete with exaggerations and false statements.   The defendants then stood before the Court on January 27, 2014 and learned that they had been properly cited and were guilty of the crimes charged.   Having had their day in Court, and still facing sentencing, Dezarn immediately repeated his offense and Goldstein began advertising another criminal gathering on April 20, 2014.

As stated by the defense at trial, the defendants believe they must break the law to get attention for their cause.   They make police officers their foil and then cry unfairness because they disagree with the legally mandated outcome.   There is no reason that the public which pays for police protection, and who rely on police and the Courts for services and the fair administration of justice, must suffer this lawlessness and the waste of government resources.   A substantial penalty is merited under all of the statutorily mandated sentencing factors cited above. 18 U.S.C. § 3553(a)(2).

As the First Circuit Court of Appeals has observed, "allegiance to a cause, no matter how deeply grounded, does not require endless leniency in sentencing." *United States v. De Jesus*, 277 F.3d 609, 613 (1st Cir. 2002).   Even after conviction, both defendants have indicated their intention to urge others to break the law.   While the law can be changed, it cannot be flouted without consequence.

Applying the statutory criteria to this case, it is apparent that there is a need for a substantial and long-term sentence here.   A sentence of a fine alone will permit these unrepentant defendants to simply move on with their illegal conduct.   The fine payment may not come from the defendant, or it may be reimbursed by other parties and will only be a cost of "doing business."   There will be no deterrence afforded and no promotion of respect for the law.

The government therefore recommends a term of probation of over a year.   An extended term will indicate to the defendants, and to other like-minded persons, that violation of the law carries serious and long-lasting consequences beyond the mere payment of a fine and threat of incarceration.   Such a sentence will promote respect for the law passed by our democratic institutions and administered by our Court system.   It will serve as a deterrent to future crimes by these defendants and others and thereby protect the public.   A lengthy sentence also will give the supervision of the probation office, with all of the programming that entails, more time to have a salutary impact on each defendant's life.   Such a sentence is also needed to reflect the seriousness of the offense as injuries, whether intended or not, can result when duty-bound law enforcement officers must act to enforce the law.

It is for these reasons as well that the government recommends special conditions of probation.   These conditions, outlined below, will act to impede the defendants' stated desire to

commit more crimes and to encourage others to commit more crimes, particularly on federal property.   As the Second Circuit wrote of a tax protestor, "to allow him to continue to advocate, through seminars and other meetings, that others do what he is being punished for, runs counter to the goal of rehabilitation and endangers the public."   *United States v. Schiff*, 876 F.2d 272, 276-77 (2d Cir. 1989).

The government therefore recommends that the defendants' sentences include the following:

- That the defendants immediately pay a fine of $5,000 and a special assessment of $10.

- That the defendants serve a period of at least eighteen months probation, subject to all of the standard conditions of probation.

- That the defendants shall not enter within 100 feet of Independence National Historical Park in connection with any meeting, event, group, gathering or demonstration of which the purpose is to advocate or commit a criminal act.[1]

- That, in addition to the standard conditions, the following condition apply to defendant Goldstein's probation:

the defendant shall not commit a federal, state, or local crime or by any means

advocate that others commit the offenses of illegal controlled substances

possession, disorderly conduct, or interfering with or resisting police officers.

---

1 This was a condition of probation imposed by the Court in United States v. Tomaccio, 13 MJ-00636.   As discussed above, that case involved a defendant who was also a leader of these marijuana events.   After his arrest, Tomaccio was ordered to stay out of the Park during marijuana events but repeatedly returned during the events to stand just off Park property on the asphalt city streets on Market and Fifth Streets to participate in the marijuana events.   Tomaccio did not go to trial but plead guilty and was sentenced by the Court to one year probation, applying this condition and the standard conditions.   That defendant was only cited in one incident, was not cited after May 18, 2013, and indicated to the Court that he would not protest further in the Park.

This sentence leaves intact the defendants' ability to advocate for the change of marijuana prohibition laws.   It also leaves intact their ability to move throughout the country for work and to visit government facilities under appropriate circumstances.   The conditions of probation are designed to the make clear to the defendants and others that they cannot break the law or encourage others to do so.   The government further believes that the Court may want to impose a community service component in order to compensate the community for the drain the defendants put on law enforcement resources that the community pays for, and to educate the defendant to the disparate needs of a democratically established society which has pressing problems beyond the ability to smoke marijuana freely.

        Such conditions have been approved by many courts in cases such as the one at bar.   See, e.g., *United States v. Goldin*, 311 F.3d 191 (3d Cir. 2002)(court properly imposed travel restrictions on probation sentence for demonstrator who interfered with agency function in Independence Park to reflect the seriousness of the offense, promote respect for the law, and prove a just punishment for the offense.); *United States v. Sicher*, 239 F.3d 289 (3d Cir. 2000)(court properly barred defendant from two Pennsylvania counties during the term of her eight year supervised release even though it meant relocating her children because her return to the area would make recidivism extremely likely); *United States v. Showalter*, 933 F.2d 573, 574-76 (7th Cir. 1991)(court did not abuse discretion in imposing ban during supervised release on associating with violent group because of the high likelihood of being drawn into violent behavior); *United States v. Schiff*, 876 F.2d 272, 276-77 (2d Cir. 1989)(no abuse of discretion in imposing on tax protestor a condition of probation that he not associate with any group advocating non-compliance with tax laws since allowing him to advocate for others to engage in

his crime "runs counter to the goal of rehabilitation and endangers the public."); *United States v. Lawson*, 670 F.2d 923, 929-30 (10th Cir. 1982)(same); *United States v. Lowe*, 654 F.2d 562, 567-68 (9th Cir. 1981)(proper probation condition to keep protestors 250 feet from protest site to discourage repeat offenses); *United States v. Malone*, 502 F.2d 554, 556-57 (9th Cir. 1974)(where crime resulted from "high emotional involvement" with Irish Republican sympathizers, appropriate to restrict his associations to prevent future criminality); *United States v. Wyatt*, 135 Fed. Appx 16, 19-20 (9th Cir. 2005)(proper probation condition to bar protestor from National Forest lands where preventing defendants from again interfering with operations serves the interest of protecting the public); *United States v. De Jesus*, 116 F. Supp. 256 (D. Puerto Rico 2000)(court properly sentenced protestor to probation with condition that he not return to protest site as his strong beliefs made recidivism likely).

The government believes that the sentence outlined above is just punishment for the offense and imposes only those restrictions on liberty necessary to achieve the purposes of sentencing and probation.   The government respectfully requests imposition of these sentences.

Respectfully submitted,

ZANE DAVID MEMEGER
United States Attorney


_____/s/_____
RICHARD W. GOLDBERG
Section Chief

Certificate of Service

The government has served this Sentencing Memorandum electronically through the electronic service system of the Court and by mail with a compact disc containing the videos referenced in this Memorandum on

       William H. Buckman, Esq.
       110 Marter Avenue, Suite 202
       Moorestown, NJ   08057

       George Henry Newman, Esq.
       834 Chestnut Street, Suite 206
       Philadelphia, PA   19107

                    /s/
                    RICHARD W. GOLDBERG
                    Assistant U.S. Attorney

Date: March 19, 2014